IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARSHALL G. WELTON, | ) |
| | ) |
| Plaintiff, | ) No. 1:13-cv-1398 |
| | ) |
| vs. | ) |
| | ) |
| OFFICER SHANI J. ANDERSON, individually, and | ) |
| MICHAEL L. THOMPSON, | ) |
| | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT AND JURY DEMAND**

For a complaint against the defendants, Plaintiff states:

### I.  Jurisdiction

1. Pursuant to 28 U.S.C. §§ 1331 & 1343, this Court has jurisdiction to hear Plaintiff's constitutional claims, brought under 42 U.S.C. § 1983, against Defendant Officer Shani J. Anderson.  No state law claims are alleged against Officer Anderson.

2. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction to hear Plaintiff's related state law claims, arising from the same nucleus of operative facts, against Defendant Thompson.  No federal claims are alleged against Defendant Thompson.

3. Pursuant to 28 U.S.C. § 1391, venue is proper in this Court and Division, because the events giving rise to this action occurred in Indianapolis.

### II.  Parties

4. Plaintiff Marshall G. Welton is an adult and a resident of Marion County, Indiana.

5.  Defendant Officer Shani J. Anderson is an adult and a police officer with the Indianapolis Metropolitan Police Department.  Upon information and belief, Defendant Anderson resides in the geographic area of the Indianapolis Division of this Court.

6.  Defendant Michael L. Thompson is an adult and a resident of Hamilton County, Indiana.

7.  At all times material and with respect to the allegations raised in this complaint, Defendant Anderson acted under the color of state law.

### III.  Claims

#### (A)
#### Common Allegations

##### (i)

8.  Plaintiff Marshall G. Welton, 52, is an Indianapolis businessman.  He holds a Bachelor's degree in business, an MBA, and a J.D.  At all times relevant, Mr. Welton was the manager of Wong Ventures, LLC [hereinafter Wong], and WGO Investments, Inc. [hereinafter WGO], both businesses engaged in buying, selling, and renting residential real estate.

##### (ii)

9.  As of mid-2009, Defendant Michael Thompson had a rental house located at 3508 N. Ireland Avenue.  This house had sustained severe fire damage and was empty since 2009.  All references to "the house" in this complaint are to this house.

10. Sometime, in the fall of 2009, Mr. Thompson called Mr. Welton on an unrelated matter.  During the conversation, he indicated a desire to sell his house.  Mr. Thompson reported that he had filed an insurance claim for the fire damage to his rental house and had partially resolved his insurance claim and had received, or expected to receive, about $69,000 from his insurance

company. Mr. Thompson further reported that because he had "replacement value" coverage, he could potentially receive an additional amount in excess of $15,000 from his insurer. Mr. Thompson offered to sell his house to Wong.

11. On a few occasions between September and November of 2009, Thompson and Welton discussed the sale of the house on the phone, but never met in person. About late November to early December of 2009, Thompson and Wong reached an agreement regarding the sale of the rental house. They agreed that Wong would repair the house and upon the completion of the repairs, if Thompson recovers additional funds under the replacement cost coverage of his insurance policy, Thompson would pay Wong $5,000 and convey the house to Wong. In the alternative, the parties agreed that if Thompson did not receive any additional funds from his insurer, Wong would pay Thompson $5,000 and Thompson would convey the house to Wong. Under either alternative, Thompson was expected to convey the house to Wong. In addition, Thompson and Wong agreed that they would equally share in the cost of cleaning the debris out of the house, which Wong agreed to cap at $2,400.00.

12. Mr. Welton and Mr. Thompson agreed as Wong repaired the house, it would place the property on the market, including the placement of a "For Lease or Sale" sign at the site at the start of the repair process.

13. In the first week of December 2009, Wong's crew started to remove the debris out of the house and to repair it. They also began to market it.

14. During the following months, Mr. Welton spoke with Mr. Thompson on the phone a few times and provided him with periodic reports regarding the progress.

15. At the start of repairs, Wong placed a conspicuous "For Lease or Sale" sign in the front yard of the house.  The sign listed Wong's phone number as the contact number for prospective buyers or renters.

16. Upon information and belief, while the repairs were in progress, Thompson visited the house on various occasions.

17. Upon information and belief, when visiting the house, Thompson had seen the yard sign.

18. The repairs were substantially completed in the early spring of 2010.  Mr. Welton requested that Mr. Thompson make arrangements to conclude closing on the house in compliance with their agreement.

19. Mr. Thompson declined to convey the house to Wong.  Instead, he made a new demand.  He wanted Wong to provide him a repair invoice in excess of $85,000 for submission to his insurance company.  Mr. Welton declined to do so.

20. Wong and Welton took all reasonable steps to secure Mr. Thompson's compliance with their agreement, even though Mr. Thompson had not diligently pursued his replacement cost insurance claim.  Eventually, on May 12, 2010, Wong obtained a cashier's check for Mr. Thompson in the amount of $3,800, i.e. $5,000 less one-half of debris removal cost, and requested Mr. Thompson to convey the house and obtain his check.  Mr. Thompson declined.  Finally, on June 2, 2010, Wong obtained a cashier's check for Mr. Thompson in the amount of $5,000, i.e. this time without deducting any expenses due to debris removal, and requested Mr. Thompson to convey the house and obtain the check.  Once again, Mr. Thompson declined.

**(iii)**

21. In March of 2010, Alfred and Jackie White contacted Mr. Welton to lease or buy the house.

22. On March 31, 2010, the Whites executed a Lease with Option to Purchase and a Land Contract with WGO Investments, a company which manages some of the investments of Wong Ventures, LLC.  The land contract was specifically contingent upon Wong securing the deed to the house from Thompson and the Whites being able to secure a first-time buyer credit from the IRS.  These contingencies were noted in the document entitled "Lease with Option to Purchase."  By the time of the execution, the Whites made a deposit of about $1,375, and agreed to pay an additional deposit of $625 in the near future.

23. At the time the Whites and Welton signed the Lease with Option to Purchase and the Land Contract with WGO and Wong, Mrs. White knew that her husband had dementia. Nevertheless, she allowed him to sign the Lease with Option to Purchase and the Land Contract, even though she had a power of attorney from her husband and could sign for him.

24. On May 19, 2010, an attorney for the Whites informed Wong, for the first time, of Mr. White's mental incapacitation and incompetence, indicating the contracts with the Whites were null and void.  Mr. Welton agreed, cancelled the Lease with Option to Purchase and the Land Contract, and sent a cashier's check for $2,000 to the Whites' attorney.  Alfred and Jackie White did not accept the check.

**(B)**
**Count I**
**Allegations against Defendant Officer Anderson**

25. Plaintiff hereby adopts by reference all allegations stated in section III(A) (Common Allegations) of this Amended Complaint and Jury Demand, as if they were restated herein in their entirety.

26. On July 14, 2010, Defendant Anderson signed, under the penalties for perjury, an Affidavit of Probable Cause and an Information charging Mr. Welton with one count of forgery, under Ind. Code § 35-43-5-2, as a class C felony, and two counts of theft, under Ind. Code § 35-43-4-2, as class D felonies.  Both documents were filed with Marion Superior Court, Criminal Division, Room 2, under cause Number 49G02-1007-FC-055142.

27. In her probable cause affidavit and the charging information, Defendant Anderson ignored exculpatory evidence and intentionally presented false, material facts:

> (a) Defendant Anderson falsely testified that Mr. Welton had sold a house he never owned or held any contractual interest in, where she knew that Mr. Welton, acting on behalf of Wong, had an agreement with Mr. Thompson, which required Mr. Thompson to convey the rental house to Wong.
>
> (b) Defendant Anderson falsely testified that Mr. Welton had sold a house he never owned or held any contractual interest in, where she knew that the sale of the house to the Whites was contingent on Wong actually receiving the conveyance of title from Mr. Thompson.
>
> (c) Defendant Anderson falsely testified that Mr. Welton had signed documents on behalf of "Wong Investments, Inc.," a non-existent entity, where Officer Anderson knew that Mr. Welton is the manager of Wong and WGO, and is authorized to sign documents on behalf of either entity.
>
> (d) Upon information and belief, Defendant Anderson falsely testified that Mr. Welton "knowingly and with intent to defraud" had signed documents on behalf of "Wong Investments, Inc.," a non-existent entity, where she knew that Mr. Welton is authorized to sign documents on behalf of both Wong and WGO.

6

(e) Defendant Anderson falsely testified that Mr. Welton sold the house "with knowledge that he never owned [it]," where Defendant Anderson knew that Mr. Welton never claimed to have owned the house.

28. Upon Information and belief, Officer Anderson advised Thompson and the Whites not to settle their civil matters with Wong, in order to enhance the chances of bringing charges and obtaining a criminal conviction against Mr. Welton.

29. Upon information and belief, Officer Anderson withheld exculpatory evidence including the taped interviews of Michael Thompson and Jackie White. It was only during a related civil case that Mr. Welton discovered these materials.

30. As a result of Defendant Anderson's false testimony, Mr. Welton was arrested, processed, incarcerated, and was released on a $100,000.00 bond.

31. As a result of Defendant Anderson's false testimony, Mr. Welton was criminally prosecuted.

32. Even assuming that Defendant Anderson was not aware of the falsity of her sworn statements when she filed them, she took no steps to correct those statements after their falsity became obvious to her during the course of litigation.

33. On September 2, 2011,[1] the Marion Superior Court dismissed all charges against Mr. Welton.

34. Defendant Anderson caused false criminal charges to be brought against Plaintiff.

35. There was no probable cause for prosecuting Mr. Welton.

36. Because of Officer Anderson's actions and inactions, as described herein, the criminal proceeding against Mr. Welton was fundamentally unfair.

37. The actions and inactions of Defendant Anderson, as described in this Complaint and Jury Demand, were undertaken knowingly, willfully, intentionally, and maliciously.

---

[1] September 2, 2013, was the Labor Day.

38. Defendant Anderson's actions and inactions constituted unreasonable and malicious prosecution of Mr. Welton and denied him due process, in violation of the fourth and fourteenth amendments to the United States Constitution.

39. As a direct result of the actions and inactions of Defendant Anderson, Plaintiff sustained economic loss in bonding and defending himself in the criminal proceeding, damages to his reputation and good name, and violations of his federal rights and liberties.

40. Defendant Anderson has been engaged in a pattern of filing baseless and untrue charges against Mr. Welton.  On or about May 11, 2006, she filed an Affidavit of Probable Cause in Marion County Superior Court, Criminal Division, under Cause No. 49G04-0605-FC-084622, charging Mr. Welton with forgery and conspiracy to commit forgery.  The case was dismissed on June 21, 2007.   On or about May 30, 2007, Defendant Anderson filed an Affidavit of Probable Cause and an Information in Marion County Superior Court, Criminal Division, under Cause No. 49G04-0705-FC-097329, charging Mr. Welton with theft and fraud on a financial institution.  That case was dismissed on March 3, 2011.

**(C)**
**Count II**
**Allegations against Defendant Michael L. Thompson**

41. Plaintiff hereby adopts by reference all allegations stated in section III(A) (Common Allegations) of this Amended Complaint and Jury Demand, as if they were restated herein in their entirety.

42. In order to secure criminal prosecution of Mr. Welton, Defendant Thompson intentionally provided false, material facts to law enforcement authorities, including the following:

(a) Defendant Thompson falsely reported that Mr. Welton had sold his rental house and that Wong or Mr. Welton had no ownership or contractual interest in the house, where he knew that he had an agreement with Wong requiring Mr. Thompson to convey the house to Wong.

(b) Defendant Thompson falsely reported that Mr. Welton had sold his rental house and that Wong or Mr. Welton had no ownership or contractual interest in the house, where he knew that the sale of the house to the Whites was contingent upon Wong actually receiving the conveyance of title from Mr. Thompson.

(c) In order to substantiate his story, Defendant Thompson falsely reported that he met Mr. Welton at the house on or about September 15, 2009, where no such meeting took place until November of 2009.

(d) Defendant Thompson falsely reported that, when he called Mr. Welton several weeks after their alleged September 15, 2009 meeting, he was surprised that Mr. Welton had already started and made substantial repairs to the house, where he knew that no repairs had been made prior to an agreement with Wong.

(e) Defendant Thompson falsely reported that the repairs were done without an agreement, where he knew the agreement was reached in late November of 2009 and the repairs started in early December 2009.

(f) Defendant Thompson falsely reported that he was surprised that Mr. Welton was repairing his house, where he had received periodic reports of the repair progress during the repair period.

(g) Defendant Thompson falsely reported that Mr. Welton expected Mr. Thompson to sign the property over to him without any payment to Mr. Thompson, where on two occasions Wong obtained cashier's checks in the order of Mr. Thompson, and in compliance with the agreement of Wong and Thompson, but Mr. Thompson had refused to accept the cashier's checks and comply with the agreement.

43. As a result of Defendant Thompson's false reports to Officer Anderson, Mr. Welton was arrested, processed, incarcerated, and was released on a $100,000.00 bond.

44. As a result of Defendant Thompson's false reports to Officer Anderson, Mr. Welton was criminally prosecuted.

45. Defendant Thompson caused false criminal charges to be brought against Plaintiff.

46. There was no probable cause for prosecuting Mr. Welton.

47. During the criminal prosecution of Mr. Welton, Defendant Thompson took no steps to correct his false reports to law enforcement authorities.

48. On September 2, 2013, the Marion Superior Court dismissed all charges against Mr. Welton.

49. Because of Defendant Thompson's actions and inactions, as described herein, the criminal proceeding against Mr. Welton was fundamentally unfair.

50. The actions and inactions of Defendant Thompson, as described in this Complaint and Jury Demand, were undertaken knowingly, willfully, intentionally, and maliciously.

51. Defendant Thompson's actions and inactions violated the Indiana state law.

52. As a direct result of the actions and inactions of Defendant Thompson, Plaintiff sustained economic loss in bonding and defending himself in the criminal proceeding, damages to his reputation and good name, and violations of his state rights.

## IV.  Demand for Relief

53. Plaintiff requests that the Court grant him a trial by jury.

54. Plaintiff requests that the Court grant him compensatory damages, punitive damages, costs and expenses, attorney's fees, and all other just and reasonable relief, against Defendant Officer Anderson.

55. Plaintiff requests that the Court grant him compensatory damages, punitive damages, costs and expenses, and all other just and reasonable relief, against Defendant Thompson.

Respectfully submitted,

September 3, 2013

/s/Hamid R. Kashani
Hamid R. Kashani, Attorney No. 11225-49
445 N. Pennsylvania Street, Suite 888
Indianapolis, Indiana  46204
(317) 632-1000
(317) 536-3312 (fax)
HKashani@KashaniLaw.com

*Attorney for Plaintiff*